Kenneth Higgins, William Lindsay, III, and William Martin, Appellants, *v.* Township of Radnor and Zoning Hearing Board of Radnor Township, Appellees.

Argued April 1, 1974, before President Judge Bow-
MAN and Judges CRUMLISH, JR., KRAMER, WILKINSON,
JR., MENCER, ROGERS and BLATT.

*James S. Kilpatrick, Jr.,* with him *Thomas J. Burke*
and *Haws and Burke,* for appellants.

*Joseph A. Damico, Jr.,* with him *Fronefield, deFuria*
*and Petrikin,* for appellees.

OPINION BY JUDGE ROGERS, April 24, 1974:

The appellees in this case, the five legal and equita-
ble owners of a tract of land in Radnor Township,
Delaware County, containing about five acres, were re-
fused a Certificate of Occupancy for the establishment
and operation of a tennis club for profit. The property
is in a R-1 district of the township zoning ordinance
and map, in which the use of land for the purpose in-
tended is impermissible.

The appellees appealed from the refusal of the Certificate of Occupancy, seeking a variance, which, after hearings, the Zoning Hearing Board granted. Intervening objecting neighbors, appellants here, appealed the grant of the variance to the Court of Common Pleas of Delaware County, which affirmed the Zoning Hearing Board. The intervenors have appealed to us the lower court's order.

No evidence was taken by the court below, so that our review is limited to a determination of whether or not the Zoning Hearing Board abused its discretion or committed an error of law in granting the variance.

The five-acre parcel in question is the remainder of a tract containing approximately 49 acres acquired by a corporation in 1955. Those of the appellees who have been referred to herein as record owners,[1] purchased the stock of the corporation in 1956. In 1967 the 49 acre tract was bisected by the Mid-County Expressway, locally known as the Blue Route. The corporation thereafter sold the larger of the two tracts created by the Expressway, which is described as being capable of accommodating a development of 25 to 30 one-acre lots. The corporation was thereafter dissolved and its assets, including the remaining five-acre tract, came into the possession of the stockholders, four of the appellees herein.

The tract is unimproved and roughly triangular in shape. It is bounded on the west for its entire length by an approximately 25 foot high bank at the summit of which is constructed the Expressway, and on the south and east by public roads. Just inside the road which forms the east line the property is traversed by Ithan Creek which runs in a ravine for the whole length of the property. Near the foot of the embankment of

---

[1] The so-called equitable owner is a developer of tennis establishments who has agreed to purchase the property.

the Expressway and again traversing the whole length of the property is a sewer trunk line.

The Zoning Hearing Board, based upon the testimony of a professional engineer and a real estate expert presented by the appellees, found that while development of the tract for five residences in accordance with the requirements of the R-1 district would be feasible from an engineering standpoint, the "tract in question is subject to unique physical circumstances and conditions by the reason of presence of Ithan Creek, the grade of the creek's banks, the traversal of it by the sewer trunk line, and the immediate physical presence of the embankment of the Blue Route" and that "the combination of physical factors, including those mentioned above, plus the patent impossibility of locating an interior road within the tract . . . leads us to the conclusion that the tract cannot be developed in accordance with the applicable R-1 zoning." Among other matters testified to by the appellees' engineer was his opinion that four of the five lots possible to be created on the tract would require the construction of bridges over Ithan Creek, each costing $16,000. The appellees' real estate appraiser expressed his opinion that residences bearing prices sufficient to cover this and other development costs, located as they would have to be under the 25 foot embankment of the Expressway, would be unsaleable.

While the intervenors produced professional opinion evidence tending to show that the property could be economically and feasibly developed in single family residential tracts, the Zoning Hearing Board chose to accept the appellee's evidence. This was no abuse of its discretion.

It is firmly established that an applicant for variance may carry his burden of showing unnecessary hardship unique or peculiar to his property by evidence that the physical characteristics of the property are such

that it can only be arranged for the purposes permitted by the zoning ordinance at prohibitive expense. *Forest Hills Borough Appeal*, 409 Pa. 392, 187 A. 2d 166 (1963); *Ferry v. Kownacki*, 396 Pa. 283, 152 A. 2d 456 (1959); *Borough of Ingram v. Sinicrope*, 8 Pa. Commonwealth Ct. 448, 303 A. 2d 855 (1973); *Zoning Board of Adjustment v. Koehler*, 2 Pa. Commonwealth Ct. 260, 278 A. 2d 375 (1971). The facts of the instant case relating to the physical characteristics of this severed parcel abutting what soon, hopefully, will be a major traffic artery in southeastern Pennsylvania, present a classic case for the application of this necessary exception to the rule of strict adherence to zoning regulations.

Order affirmed.